# EXHIBIT 1

Served in Person
5/16/2018 @
L. Madea 9:55AM

71760
71760

Ty Hyderally, Esq. (ID#023231993)
Hyderally & Associates, P.C.
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
Attorneys for Plaintiff's: David Sadek, Laura J. Pastore,
Al Dixit and Kishana Dunham

| | |
|---|---|
| **DAVID SADEK, LAURA J. PASTORE, AL DIXIT AND KISHANA DUNHAM**<br><br>**PLAINTIFFS,**<br><br>**VS.**<br><br>**MANUFACTURERS AND TRADERS TRUST COMPANY, d/b/a M&T BANK CORPORATION, JOHN DOES 1-10, AND XYZ CORP. 1-10,**<br><br>**DEFENDANTS.** | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br>DOCKET NO.:<br><br>CIVIL ACTION<br><br>**SUMMONS** |

**MANUFACTURERS AND TRADERS TRUST COMPANY, d/b/a M&T BANK CORPORATION**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

*Michelle M. Smith, Esq.*

Michelle M. Smith, Esq.,
Clerk of the Superior Court

DATED: **May 15, 2018**

### Name of Defendant to be served:

**MANUFACTURERS AND TRADERS TRUST COMPANY, d/b/a M&T BANK CORPORATION**

### Address of the Defendant to be served:

M&T Bank Legal Document Processing
626 Commerce Drive
Amherst, NY 14228

### Phone Number:

(716) 635-0210

T:\lLaw Offices of Ty Hyderally\M&T Bank Plaintiffs\Pleadings\021518.SUM M&T.doc

**Ty Hyderally, Esq. (Atty. ID No.: 023231993)**
**Hyderally & Associates, P.C.**
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
Attorneys for Plaintiffs: Laura J. Pastore, David Sadek, Al Dixit and Kishana Dunham

| | |
|---|---|
| **DAVID SADEK, LAURA J. PASTORE, AL DIXIT AND KISHANA DUNHAM**<br><br>**PLAINTIFFS,**<br><br>**VS.**<br><br>**MANUFACTURERS AND TRADERS TRUST COMPANY, d/b/a M&T BANK CORPORATION, JOHN DOES 1-10, AND XYZ CORP. 1-10,**<br><br>**DEFENDANTS.** | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br>DOCKET NO.:<br><br>CIVIL ACTION<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs, David Sadek ("Sadek"), Laura J. Pastore ("Pastore"), Al Dixit ("Dixit") and Kishana Dunham ("Dunham"), (hereinafter, collectively referred to as "Plaintiffs"), by way of this Complaint against the defendants, M&T Bank Corporation ("M&T"), John Does 1-10, and XYZ Corp. 1-10 (hereinafter collectively the "Defendants") hereby say:

### I. Nature of Action, Jurisdiction, and Venue

1. This is an action seeking equitable and legal relief for: (1) a violation of the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.*; (2) a violation of the New Jersey Wage Payment Act, N.J.S.A. 34:11-4.1, *et seq.*; and (3) a violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA").

2. This court has jurisdiction due to the nature of the action and the amount in controversy. Additionally, Plaintiffs have satisfied all prerequisites to bringing these claims.

3. Venue is appropriate in this court since Plaintiffs worked in Bergen County during the relevant time period and defendants' place of business is located in Bergen County.

## II. Parties

4. Sadek, Dixit, and Dunham were Loan Officers (Mortgage Originators) and Pastore was a Loan Officer Assistant who all worked for M&T Bank located at 45 Eisenhower Drive, 4th Floor, Paramus, NJ 07652.

5. Thus, Plaintiffs were employees of the Defendant Corporation and performed job related duties in the State of New Jersey.

6. During the relevant time period, JOHN DOES 1-10 are currently unknown employees who were either senior management level employees who controlled Plaintiffs' workplace, and supervised Plaintiffs and aided and/or abetted in the commission of conduct complained of herein and/or who either acted within the scope of their employment at the workplace during working hours, or, to the extent they went beyond the scope of their employment, defendants ratified, embraced and added to his conduct. As the parties engage in discovery, Plaintiffs retain the right to amend the Complaint to add these individual employees by name.

7. During the relevant time period, XYZ Corp. 1-10 are unknown affiliated corporations or entities or other corporations who have liability for the claims set forth herein. As the parties engage in discovery, Plaintiffs retain the right to amend the Complaint to add these individual entities by name.

8. Thus, all Defendants are subject to suit under the statutes alleged above.

9. At all times referred to in this Complaint, employees of the Corporate Defendant, who are referred to herein, were acting within the scope of their employment at the workplace during working hours, or, to the extent that they were not so acting, the Corporate Defendant ratified, embraced and added to their conduct.

## III. Factual Allegations

### LAURA J. PASTORE

10. On or about August 1, 2016, Pastore began working as a Loan Officer Assistant for M&T.

11. Pastore's rate of pay upon hire was eighteen dollars and seventy-five cents ($18.75) an hour.
12. Pastore was hired by Phil Caggiano ("Caggiano"), the Vice President, Mortgage Sales Manager for New Jersey at M&T Bank.
13. Pastore was trained by Tomasz Labuda ("Labuda"), Loan Officer, under the supervision of Caggiano.
14. In her position as Loan Officer Assistant, one of Pastore's responsibilities was to make sure loan officers' timesheets were submitted on a biweekly basis.
15. Pastore was assigned to review loan officers' timesheets and instructed by Labuda and Caggiano to make sure all loan officers recorded their hours as Monday through Friday 8:30 AM to 5:00 PM regardless of how many hours each loan officer actually worked.
16. Additionally, loan officers and Pastore were mandated to write in a 30 minute lunch break, even if they did not take a lunch break.
17. Caggiano told Pastore she was to enter 40 hours of work a week on her timesheet as well regardless of how many hours she actually worked.
18. Whenever a loan officer entered more than 40 hours a week on a timesheet, Caggiano told Pastore to change the entry to 40 hours.
19. Over the course of Pastore's employment, Caggiano increased Pastore's workload, making it impossible to complete her work in 40 hours a week.
20. Despite instructing Pastore to only log 40 hours a week on her timesheet, Caggiano was well aware that Pastore normally worked from 8:00 AM to 7:30 PM Monday through Friday and approximately one (1) hour on the weekends.
21. In fact, it was Caggiano who asked Pastore to arrive early to make photocopies for him and work late helping loan officers, which she regularly did.
22. Additionally, Pastore was often unable to take her half-hour daily lunch break in order to complete her work assignments.
23. Thus, Pastore worked approximately one hundred and seventeen (117) hours every two weeks and was paid biweekly for only eighty (80) of those hours.
24. Despite this, Defendants only paid Pastore her regular rate of eighteen dollars and seventy-five cents ($18.75) per hour, for 80 hours on a biweekly basis.

25. As Pastore was a non-exempt employee, Defendants were legally obligated to pay her one and one-half times her hourly rate, for all time worked over forty (40) hours in a given week.
26. Pastore openly complained to loan officers that she was not getting paid the legally required overtime, both verbally and in writing.
27. Pastore also complained to Caggiano that she was not getting paid overtime both verbally and in writing.
28. However, Defendants took no curative action.
29. On April 7, 2017 Pastore once again complained to Caggiano about her excessive workload and not being paid overtime.
30. Later that day, Caggiano asked Pastore if she wanted to quit, to which Pastore responded that she did not.
31. Two hours later, Caggiano called Pastore to his office and fired her without explanation.
32. Pastore's termination was a direct result of Pastore's complaints to her supervisor Caggiano of Defendants' illegal practice of not paying overtime in accordance with the law.
33. Pastore was retaliated against for refusing to continue working additional hours without compensation and refusing to participate in the illegal practices of M&T.
34. At the time of her termination, April 7, 2017, Pastore was paid an hourly rate of eighteen dollars and seventy-five cents ($18.75) for 40 hours a week.
35. However, Pastore worked an estimated 18.5 hours of overtime each week.
36. Pastore also received benefits of employment such as medical, dental and vision benefits, as well as paid time off in the form of vacation, sick leave and holidays.
37. These damages and the statutorily allowed for mental and physical damages caused to Pastore make up Pastore's claim for damages.

## DAVID SADEK

38. On or about August 29, 2016, Sadek began working as a Loan Officer (Mortgage Originator) for M&T.
39. Sadek's rate of pay upon hire was thirteen dollars and forty-six cents ($13.46) an hour.
40. Sadek was hired by Caggiano who was Sadek's immediate supervisor.

41. Upon hire, Sadek was instructed to record his hours as Monday through Friday 8:30 AM to 5:00 PM regardless of how many hours he actually worked.
42. Sadek did as directed despite the fact that his regular work day at the office far exceeded 8:30am to 5:00pm.
43. In fact, Sadek normally worked at the office until 9:00pm.
44. At times, Sadek worked well past 9:00pm.
45. Unbeknowst to Sadek, at some point in time, M&T installed a silent alarm system that was activated at 10:00pm.
46. Security approached Sadek and advised him that he should notify security if he was working past 10:00 pm because they were well aware that Sadek was required to work extensive hours to fulfill his duties. Security shared that the alarm system had been activated the prior night because Sadek was working past 10:00pm.
47. Additionally, Sadek was mandated to write in a 30-minute lunch break, even if he did not take a lunch break.
48. In addition to his recorded hours, Sadek worked regularly from home answering emails and phone calls, both before and after his normal scheduled hours.
49. Further, Sadek had a company-owned laptop which he used to work from home.
50. Sadek was not paid overtime for hours he worked at home.
51. In addition to working before and after hours from home, Sadek was required to work the weekend and evening open houses and home buyer seminars.
52. Defendants were well aware that Sadek worked from home and worked the open houses and home buyer seminars.
53. Despite this, Defendants did not pay Sadek overtime for the hours he worked.
54. As Sadek was a non-exempt employee, Defendants were legally obligated to pay him one and one-half times his hourly rate, for all time worked over forty (40) hours in a given week.
55. Sadek worked an estimated 21 hours of overtime each week.
56. Despite this, Defendants only paid Sadek thirteen dollars and forty-six cents ($13.46) per hour from his date of hire until the March 25, 2017 and nineteen dollars and twenty-three cents ($19.23) an hour from that date until the end of his employment in late October 2017 for 80 bi-weekly work hours.

57. Additionally, as noted above, when Sadek was hired, he was given an Offer Letter that reflected he was paid a salary of $13.46 per hour.
58. On March 25, 2017, Sadek's hourly rate was increased to $19.23 per hour.
59. In this same document, it noted that if Sadek received a recoverable "Draw," it would be considered an advance against commission.
60. However, nowhere in the Offer Letter does it state or intimate that "Draw" was defined as Sadek's base salary.
61. Despite this, Defendants would offset Sadek's base salary from his commissions.
62. Such an action is a violation of the New Jersey wage laws and a breach of the M&T's contractual obligations as noted in its Offer Letter.
63. Further, Sadek gave 30 days-notice of his resignation. Defendants accepted his notice but only paid Sadek commissions for loans that closed within 14 days of Sadek's resignation.
64. Sadek also received benefits of employment such as medical, dental, and vision benefits, as well as paid time off in the form of vacation, sick leave and holidays.
65. These damages and the statutorily allowed for mental and physical damages caused to Sadek make up Sadek's claim for damages.

## AL DIXIT

66. On or about August 8, 2016, Dixit began working as Loan Officer (Mortgage Originator) for M&T.
67. Dixit's rate of pay upon hire was thirteen dollars and forty-six cents ($13.46) an hour.
68. Dixit was hired by Caggiano who became Dixit's immediate supervisor.
69. Upon hire, Caggiano instructed Dixit to record his hours as Monday through Friday 8:30 AM to 5:00 PM, regardless of how many hours he actually worked.
70. Additionally, Dixit was mandated to write in a 30 minute lunch break, even if he did not take a lunch break.
71. In addition to his recorded hours, Dixit worked regularly from home answering emails and phone calls, both before and after his normal scheduled hours.
72. Further, Dixit had a company-owned laptop which he used to work from home.
73. Dixit was not paid overtime for hours he worked at home.

74. In addition to working before and after hours from home, Dixit was required to work the weekend and evening open houses and home buyer seminars.
75. Defendants were well aware that Dixit worked from home and worked the open houses and home buyer seminars.
76. Despite this, Defendants did not pay Dixit overtime for the hours he worked.
77. When Dixit complained to Caggiano, Caggiano responded that M&T didn't pay overtime.
78. As Dixit was a non-exempt employee, Defendants were legally obligated to pay him one and one-half times his hourly rate, for all time worked over forty (40) hours in a given week.
79. On or about the first week of July 2017, Caggiano left his employment with M&T Bank.
80. On or about the second week of July 2017, Kevin Ellis ("Ellis") became the loan officers' supervisor, including Dixit's.
81. When Ellis became Dixit's supervisor, Dixit heard Ellis say that loan officers should be paid overtime at a Sales Meeting.
82. Dixit told Ellis that they were not, in fact, paid for overtime hours.
83. Despite the fact that Ellis was told that loan officers were not being paid overtime, Defendants took no curative action.
84. Dixit worked an estimated 20 hours of overtime each week.
85. Despite this, Defendants only paid Dixit thirteen dollars and forty-six cents ($13.46) per hour until the end of his employment in mid-November 2017 for 80 biweekly work hours.
86. Additionally, as noted above, when Dixit was hired, he was given an Offer Letter that reflected he was paid a salary of $13.46 per hour.
87. In this same document, it noted that if Dixit received a recoverable "Draw," it would be considered an advance against commission.
88. However, nowhere in the Offer Letter does it state or intimate that "Draw" was defined as Dixit's base salary.
89. Despite this, Defendants would offset Dixit's base salary from his commissions.
90. Such an action is a violation of the New Jersey wage laws and a breach of the M&T's contractual obligations as noted in its Offer Letter.
91. Dixit also received benefits of employment such as medical, dental, and vision benefits, as well as paid time off in the form of vacation, sick leave and holidays.

92. These damages and the statutorily allowed for mental and physical damages caused to Dixit make up Dixit's claim for damages.

## KISHANA DUNHAM

93. On or about August 8, 2016, Dunham began working as a Loan Officer (Mortgage Originator) for M&T.
94. Dunham's rate of pay upon hire was nineteen dollars and seventy-two cents ($19.72) an hour.
95. Dunham was hired by Caggiano who became Dunham's immediate supervisor.
96. Upon hire, Caggiano instructed Dunham to record her hours as Monday through Friday 8:30 AM to 5:00 PM, regardless of how many hours she actually worked.
97. Additionally, Dunham was mandated to write in a 30 minute lunch break, even if she did not take a lunch break.
98. In addition to her recorded hours, Dunham worked regularly from home answering emails and phone calls, both before and after her normal scheduled hours.
99. Further, Dunham had a company-owned laptop which she used to work from home.
100. Dunham was not paid overtime for hours she worked at home.
101. In addition to working before and after hours from home, Dunham was required to work the weekend and evening open houses and home buyer seminars.
102. Defendants were well aware that Dunham worked from home and worked the open houses and home buyer seminars.
103. Despite this, Defendants did not pay Dunham overtime for the hours she worked.
104. Dunham told Lillian Hernandez, M&T Community Reinvestment Act ("CRA") Manager, that she did not want to continue attending seminars at night because she was not getting paid for that time nor was being reimbursed for her mileage. However, no curative action was taken.
105. As Dunham was a non-exempt employee, Defendants were legally obligated to pay her one and one-half times his hourly rate, for all time worked over forty (40) hours in a given week.

106. As noted above, in July 2017, Caggiano left his employment with M&T Bank and was replaced by Ellis.
107. Dunham attended the Sales Meeting where she heard Ellis state that loan officers should be paid overtime.
108. Despite the fact that Ellis was told that loan officers were not being paid overtime, Defendants took no curative action.
109. Dunham worked an estimated twenty-one (21) hours of overtime each week, exclusive of paid time off.
110. Despite this, Defendants only paid Dunham nineteen dollars and seventy-two cents ($19.72) per hour until the end of her employment in late-November 2017 for 80 biweekly work hours.
111. In a conversation upon leaving her employment with M&T, Ellis told Dunham that he understood Dunham wanting to leave M&T as it took time away from loan officers to be with family on the weekends without paying them for the overtime work.

## Count I
### (New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.*)

112. Plaintiffs reallege and incorporate herein the paragraphs set forth in this Complaint.
113. The actions of Defendants give rise to a violation of the New Jersey Wage and Hour Law.
114. In addition, Pastore complained about the failure to pay overtime and was retaliated against for making this complaint and was terminated.
115. As a direct and proximate result of the actions of Defendants, Plaintiffs have suffered statutorily recognized emotional distress damages. Furthermore, Plaintiffs have suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiffs' lives. Moreover, some of the Plaintiffs have and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiffs' damages have been experienced in the past, and they may continue into the future.
116. Further, Plaintiffs have been required to retain an attorney to assist Plaintiffs in asserting Plaintiffs' claims and protecting Plaintiffs' rights.

## Count II
### (New Jersey Wage Payment Act, N.J.S.A. 34:11-4.1, *et seq.*)

117. Plaintiffs reallege and incorporate herein the paragraphs set forth in this Complaint.
118. The actions of Defendants give rise to a violation of the New Jersey Wage Payment Act.
119. In addition, Pastore complained about the failure to pay overtime and was retaliated against for making this complaint and was terminated.
120. As a direct and proximate result of the actions of Defendants, Plaintiffs have suffered statutorily recognized emotional distress damages. Furthermore, Plaintiffs have suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiffs' life. Moreover, some of the Plaintiffs have and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiffs' damages have been experienced in the past, and they may continue into the future.
121. Further, Plaintiffs have been required to retain an attorney to assist Plaintiffs in asserting Plaintiffs' claims and protecting Plaintiffs' rights.

## Count III
### (FLSA)

122. Plaintiffs reallege and incorporate herein the paragraphs set forth in this Complaint.
123. The actions of Defendants give rise to a violation of the FLSA.
124. In addition, Pastore complained about the failure to pay overtime and was retaliated against for making this complaint and was terminated.
125. As a direct and proximate result of the actions of Defendants, Plaintiffs have suffered statutorily recognized emotional distress damages. Furthermore, Plaintiffs have suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiffs' life. Moreover, some of the Plaintiffs have and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiffs' damages have been experienced in the past, and they may continue into the future.
126. Further, Plaintiffs have been required to retain an attorney to assist Plaintiffs in asserting Plaintiffs' claims and protecting Plaintiffs' rights.

**WHEREFORE**, as to each and every count, Plaintiffs each demand judgment on each and all of these Counts against the Defendants jointly and severally, as follows:

- A. Compensatory damages of not less than $100,000 per Plaintiff;
- B. Damages for lost wages and benefits, back pay, front pay (or reinstatement);
- C. Damages for statutorily recognized emotional distress damages.
- D. Statutory damages, if applicable;
- E. Punitive damages and or liquidated damages where permitted by law;
- F. Attorneys' fees and costs of suit;
- G. Lawful interest - including pre-judgment interest on lost wages;
- H. Lawful interest - including pre-judgment interest on any wages not paid in a timely manner; and
- I. Such other, further and different relief as the Court deems fitting, just and proper.

Plaintiffs hereby reserve the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the Defendants, witnesses, experts, and others in the course of discovery in this matter

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 4:35-1(a) and (b), Plaintiffs respectfully demand a trial by jury on all issues in the within action so triable.

### DESIGNATION OF TRIAL COUNSEL

In accordance with Rule 4:25-4, TY HYDERALLY is hereby designated as trial counsel on behalf of Plaintiffs.

### R. 4:5-1(b)(2) CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that there are no other parties known to me at this time who should be joined as parties to this action.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to R. 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

If so, please attach a copy of each, or in the alternative state, under oath and certification: (A) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

DATED:     May 14, 2018

HYDERALLY & ASSOCIATES, P.C.<br>
*Attorneys for Plaintiffs*

By: _____

**TY HYDERALLY, Esq.**
**For the Firm**

# Civil Case Information Statement

### Case Details: BERGEN | Civil Part Docket# L-003589-18

**Case Caption:** DAVID SADEK VS MANUFACTURERS & TRUS T COMPANY
**Case Initiation Date:** 05/14/2018
**Attorney Name:** TY HYDERALLY
**Firm Name:** HYDERALLY & ASSOCIATES, P.C.
**Address:** 33 PLYMOUTH STREET STE 202 MONTCLAIR NJ 07042
**Phone:**
**Name of Party:** PETITIONER : David, Sadek
**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** EMPLOYMENT (OTHER THAN CEPA OR LAD)
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 12 JURORS
**Hurricane Sandy related?** NO
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b)

05/14/2018                                                                                        /s/ TY HYDERALLY
Dated                                                                                                        Signed

BER L 003589-18   05/15/2018 4:52:40 AM   Pg 1 of 1   Trans ID: LCV2018848940

BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK        NJ 07601-7680

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (201) 527-2600
COURT HOURS  8:30 AM - 4:30 PM

                            DATE:  MAY 14, 2018
                            RE:    DAVID SADEK  VS MANUFACTURERS & TRUS T COMPANY
                            DOCKET: BER L -003589 18

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

    DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

    THE PRETRIAL JUDGE ASSIGNED IS:  HON CHARLES E. POWERS

    IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     004
AT:  (201) 527-2600.

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.

                       ATTENTION:

                              ATT: TY HYDERALLY
                              HYDERALLY & ASSOCIATES, P.C.
                              33 PLYMOUTH STREET STE 202
                              MONTCLAIR         NJ 07042

ECOURTS